**BLACK AND WHITE CABS OF ST. LOUIS, INC., a Corporation, (Plaintiff) Respondent,**

v.

**Thomas Donald SMITH, Administrator of Estate of George W. Smith, Deceased, (Defendant) Appellant.**

No. 31132.

St. Louis Court of Appeals.

Missouri.

Sept. 20, 1963.

Mehan & Sanders, Richard J. Mehan, St. Louis, for appellant.

Max Sigoloff, St. Louis, for respondent.

RUDDY, Acting Presiding Judge.

This is an action in equity brought by plaintiff, a Missouri corporation, for specific performance of an agreement entered into by and between George W. Smith during his lifetime and all other shareholders of plaintiff corporation. The defendant, son of decedent, is the administrator of the Estate of George W. Smith, Deceased. The court entered its judgment and decree in favor of the plaintiff and ordered the defendant to specifically perform the agreement entered into by the decedent, George W. Smith, and to deliver to the plaintiff corporation, properly and duly endorsed, as administrator of the Estate of George W. Smith, Deceased, twenty shares of capital stock of the plaintiff corporation upon payment to him by plaintiff of the sum of $8000.00. The court further ordered that the defendant be restrained from disposing of said stock or making application to the Probate Court for distribution of said stock as administrator of his father's estate. From this judgment and decree, defendant appeals.

The defendant presents two points for our consideration. He contends (1) that the court erred in overruling his Motion to Dismiss filed prior to the commencement of the trial because plaintiff was not a party to the agreement on which the equity action is founded and is only an incidental beneficiary under said agreement and, therefore, is not entitled to enforce it; (2) that the trial court erred in denying defendant's motion to inspect the books and records of the plaintiff corporation.

It is alleged in the petition and the evidence in support thereof shows that the decedent, George W. Smith, for a number of years prior to his death, was one of the six principal shareholders of the plaintiff corporation. Each of the shareholders of said corporation owned an equal number of shares of the capital stock of said plaintiff corporation. The six shareholders owned all of the capital stock issued by the plaintiff corporation and outstanding at the time of the execution of the agreement hereinafter referred to and at the time of the death of George W. Smith. The six shareholders comprised the Board of Directors of said corporation.

At the time of the execution of the agreement and at the time of his death, George W. Smith was the owner of 20 shares of $100 par value per share of the capital stock of plaintiff corporation which ownership was represented by a stock certificate issued by the corporation under date of June 2nd, 1955, with an endorsement thereon stating that "the sale or transfer of this stock is subject to the terms and conditions of a contract between Myron C. Redman, Oscar G. Heintzmann, John J. Smith, Frank Foley, George W. Smith and Harry Lander dated 24 day of July, 1957."

On the 28th day of February, 1958, Myron C. Redman, Oscar G. Heintzmann, John J. Smith, Frank Foley, George W. Smith, and Harry Lander, comprising all of the shareholders of plaintiff corporation, entered into an agreement, the pertinent parts of which we set out.

"(2)  Each of said parties acknowledges that by reason of the confidence

reposed by each in the other, they are desirous of not having strangers acquire any of the shares of stock held by any of the parties in the event of the happenings hereinafter stated. Therefore, said parties do hereby mutually agree with each other with reference to the disposition of their shares of stock in the aforesaid corporation as follows:

"(3) In the event any of the shareholders hereof should desire to dispose of any of his shares of stock in any or all of the companies aforesaid during his lifetime, then he shall first offer to sell all of his shares of stock to each of the aforesaid corporations at the price herein set forth: * * * Black and White Cabs of St. Louis, Inc., $300.00 per share.

"(4) The price to be paid for the shares of stock as herein mentioned in the event a shareholder desires to sell his stock in said corporation has been mutually agreed upon by and between said parties as of the date of this agreement. It is further mutually agreed that each successive year from the date of this agreement the parties shall discuss the price to be paid for the stock for the succeeding year. If said parties are unable to agree upon the amount to be paid for the stock in case of sale during the next succeeding year, then the amount provided herein for each share of stock shall be the same for and during the next succeeding year. * * *"

The agreement then provides that if the company would fail to buy the shares of stock so offered, then the shareholder shall have the right to offer to sell his stock to the other shareholders in proportion to their respective holdings and if the corporation and the shareholders to whom said stock is offered shall decline to buy such stock in proportion to their holdings in said company, then the shareholder desiring to sell shall have the right to sell his stock to any

one or more of the other shareholders of said corporation and if none of the shareholders agree to buy all of the stock, then said shareholder shall have the right to sell his stock to any other person not a shareholder of said corporation.

Thereafter the agreement provided:

"(8) None of the parties shall during his lifetime assign, encumber or dispose of any portion of his respective stock interest in the aforesaid companies by sale or otherwise without the written consent of the other shareholders of the corporation in which they hold such stock.

"(9) In the event of the death of any of the shareholders, then and in that event, the Executor, Administrator or personal representative of the deceased shall offer the stock of the deceased to the respective corporations above mentioned under the same terms and conditions hereinbefore provided, and if any of said companies shall fail or refuse to buy the same within the time mentioned aforesaid, then such stock shall be offered to the survivors of said parties under the same terms and conditions as hereinbefore agreed by all of the respective parties with each other, on the same terms as hereinbefore provided, in the event any of them desire to sell his stock during his lifetime.

"(10) Payment for said stock shall be made in cash by the party purchasing the same.

"(11) Each certificate of stock owned by the parties shall bear a notation of the existence of this contract between said parties, so that all who are not parties to this contract shall have notice thereof.

* * * * * *

"(14) The parties hereto for themselves, their successors, assigns and administrators, hereby agree to the full

performance of the covenants and agreements herein contained which shall be binding upon them individually and their personal representatives."

This agreement covered the stock in three other corporations which stock was held by the same shareholders holding the stock of plaintiff corporation. Thus the reference in the agreement to "corporations." In January of 1960 the six shareholders pursuant to the terms of the aforesaid agreement agreed that the value of and the amount to be paid for the stock of plaintiff corporation in the event of any of the happenings mentioned in said agreement during the year 1960 shall be $400 per share.

George W. Smith died on the 5th day of September, 1960, and his son, the defendant herein, was appointed administrator of his estate. After the defendant took charge of the estate of his father, he did not offer the stock of the Black and White Cabs of St. Louis, Inc., inventoried in said estate, for sale to the plaintiff corporation pursuant to the terms of the aforesaid contract. On November 30, 1960, the plaintiff, in a letter addressed to the defendant, administrator, called the defendant's attention to the terms of the agreement as set out herein and then stated:

"* * * Mr. George W. Smith owned twenty (20) shares of stock in the company. Accordingly, Black and White Cabs of St. Louis, Inc. is ready, able and willing to purchase said shares of stock at the price of $400.00 per share.

"Upon application of the administrator and an order of the Probate Court to sell said stock the corporation will immediately pay in cash the sum of Eight Thousand Dollars ($8000.00). Will you kindly inform either Mr. John J. Smith at his office, or our attorney, Mr. Sigoloff, 706 Chestnut St. when the sale of the stock to the company, as agreed under the terms of the written contract, will be consummated, following authority of the Probate Court pursuant to such application."

This offer to purchase the shares of stock held in the Estate of George W. Smith, deceased, was made pursuant to a resolution adopted at a special meeting of the Board of Directors of plaintiff corporation held at the office of the corporation on the 19th day of October, 1960. Defendant refused to accept the offer and continued to refuse to sell the stock, giving as his reason that he did not think the price offered represented a fair value. Also stating that he was unwilling to file an application for an order of the Probate Court to sell said stock.

Myron C. Redman, president of plaintiff corporation, testified that the plaintiff was willing and ready to pay the administrator $8000 for the 20 shares of stock.

The decedent, when living, was present at all meetings of the shareholders and directors and was present at the meeting held in January 1960, when the value of $400 per share was placed on the stock. No evidence was offered by the defendant.

Defendant filed his answer to plaintiff's petition on May 18, 1961, and in it he alleged that he was without sufficient knowledge to form a belief as to the allegations contained in the petition and called upon plaintiff to make proof on each item alleged in said petition.

For further answer defendant alleged that "if there was an agreement as mentioned in plaintiff's petition, it is unenforceable because of a failure of consideration."

On the 5th day of September, 1961, defendant filed a "Motion to Inspect" wherein he asked the trial court for an order requiring the plaintiff to produce the following described documents and books for the years 1956 through 1960. The records sought by defendant were the corporate stock books, minutes of stockholders and directors meetings, annual financial statements as prepared by auditors of the company, federal income tax returns, franchise

tax returns, anti-trust affidavits, reports of examinations, if any, by the United States Internal Revenue Service, general ledger account books, receipts, disbursements and general journals, all cancelled checks for the years indicated, bank statements from all banks in which plaintiff had deposits, and insurance register and policies for the years indicated. In addition, defendant sought an order to have plaintiff produce "contracts, agreements and other pertinent supporting documents in connection with activities of said company." These books and documents were sought on the ground that they had a material bearing upon the validity of the alleged contract and were necessary to the defendant in the preparation and presentation of his defense.

Plaintiff objected to the motion to inspect on the principal ground that the documents and books sought were not relevant or material to the enforcement of the contract of plaintiff with the decedent. That by reason of the terms of the contract which were enforceable against the administrator of the decedent's estate, defendant had no interest in the affairs of the company. Thereafter, the trial court denied defendant's motion to inspect and sustained plaintiff's objection thereto.

Thereafter, on the 18th day of September, 1961, defendant filed his motion to dismiss plaintiff's petition giving as his grounds (1) that the plaintiff's petition has failed to state a cause of action against defendant, (2) that the plaintiff's petition bases its cause of action on the contract and asked for specific performance by this defendant when the plaintiff is not a party to said contract and has no rights thereunder. The motion to dismiss was overruled by the trial court.

Thereafter, defendant filed an amended answer wherein he affirmatively stated:

"* * * that if there were an agreement as mentioned in plaintiff's petition, it is unenforceable because of a failure of consideration.

"3. Further answering, the defendant affirmatively states that if there were an agreement as mentioned in plaintiff's petition, it is unenforceable as to this plaintiff in this action as this plaintiff is not a party to the agreement referred to in plaintiff's petition and has no rights thereunder to bring this action."

Our review will be limited to the trial court's action in overruling plaintiff's motion to dismiss filed prior to the commencement of the trial and the court's action in denying defendant's motion to inspect books and records of the plaintiff corporation. These are the only points presented by defendant's brief under his points and authorities.

Defendant when discussing the court's action, in overruling his motion to dismiss filed prior to trial, in his brief makes frequent references to the evidence introduced by plaintiff at the trial. Strictly speaking, the evidence offered and introduced by the plaintiff at the trial should receive no consideration in determining the correctness of the trial court's action in ruling on defendant's motion to dismiss which was filed prior to the commencement of the trial and which was directed to the allegations contained in plaintiff's petition. However, an examination of the record in this case shows that the evidence introduced by plaintiff supports and practically parallels the allegations contained in plaintiff's petition. Thus, we will assume that when defendant refers to the evidence in the case he is also referring to the allegation in plaintiff's petition supported by the evidence.

It is evident from an examination of the motion to dismiss and the answers filed by the defendant and the position taken in his brief filed in this court that it is the contention of the defendant that plaintiff's suit for specific performance cannot be enforced by plaintiff because plaintiff was not a party to the contract referred to in the petition and in the evidence and that

it was only an incidental beneficiary under the agreement.

■ There is no doubt that where a person is only collaterally and incidentally benefited by a contract entered into by others he is not entitled to enforce it. Kansas City Life Insurance Co. v. Rainey, 353 Mo. 477, 182 S.W.2d 624, 155 A.L.R. 168; 12 Am.Jur., Contracts, § 279, p. 831, 832, 834. The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract. If direct, he may sue on the contract; if incidental, he has no right of recovery thereon. Williston on Contracts, Vol. 2, p. 794.

In Uhrich et al. v. Globe Surety Co. of Kansas City, 191 Mo.App. 111, 166 S.W. 845, 1. c. 846, the court, in quoting from an opinion of the Supreme Court, which had quoted an excerpt from another opinion, said:

"It is not every promise made by one to another, from the performance of which a benefit may ensue to a third, which gives a right of action to such third person; he being neither privy to the contract nor to the consideration. The contract must be made for his benefit, as its object, and he must be the party intended to be benefited."

Also see Howsmon v. Trenton Water Co., 119 Mo. 304, 24 S.W. 784, 23 L.R.A. 146.

However, as said in the Howsmon case, supra 1. c. 785 of 24 S.W:

"It is well-established law in this state, by a line of decisions extending from the year 1847 to the present date, 'that a person for whose benefit an express promise is made in a valid contract between others may maintain an action upon it in his own name.'" (Citing cases.)

Under this doctrine the person for whose benefit the contract is made becomes a third party donee beneficiary and such beneficiary is entitled to enforce the contract made for his benefit even though he is a stranger to both the contract and the consideration. Kansas City Life Insurance Co. v. Rainey, supra; Williston on Contracts, § 356, p. 824; 12 Am.Jur., Contracts, § 277, p. 825.

Restatement of the Law of Contracts, Chapter 6, § 133, p. 151, defines a donee beneficiary as follows:

"(1) Where performance of a promise in a contract will benefit a person other than the promisee, that person is, * * (a) a donee beneficiary if it appears from the terms of the promise in view of the accompanying circumstances that the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary."

Williston on Contracts, Vol. 2, Sec. 357, pp. 842–3.

Several text authorities in discussing the principle permitting recovery by third party beneficiaries have said that the basis of the rule has been stated to be that the law, operating on the act of the parties, creates the duty, establishes the privity, and implies the promise and obligation upon which the action is founded. This theory is probably more frequently stated than any other. This, however, is merely an indirect way of saying that privity is not necessary to enable the beneficiary to recover. By saying that the law operating upon the acts of the parties establishes the privity, the courts really mean that the law dispenses with the necessity of privity in the strict sense of the term. Williston on Contracts, Vol. II, Sec. 347, p. 797; 12 Am.Jur., Contracts, § 278, p. 830. Put more succinctly, a third party beneficiary under such a contract may enforce his rights thereunder even though as between such beneficiary and the promisee no consideration passed and no obligation existed. Crow v. Kaupp, Mo., 50 S.W.2d 995; Binswanger v. Employers' Liability

Assur. Corp., 224 Mo.App. 1025, 28 S.W.2d 448; Uhrich et al. v. Globe Surety Company, supra.

■ The third party beneficiary must clearly show that the contract was intended for his benefit, that is, for his direct benefit and the third party beneficiary has the burden of showing that the provisions of the contract were intended for his direct benefit.

■ Where the contract creates a right in favor of a third person, the law presumes that the party to the contract intended to confer benefits on the third person and the third party beneficiary has the right to enforce the contract although the contract also works to the advantage of the parties thereto and although the actual purpose motivating the parties in making the provisions in favor of the third party was a purely selfish one of benefiting or protecting themselves rather than of benefiting the third person. Am.Jur., Contracts, § 280, p. 832.

■ Applying the rules we have cited above, we think that the contract which forms the basis of plaintiff's cause of action as stated in its petition makes plaintiff a donee beneficiary and intended that plaintiff directly benefit by its provisions. This is so even though an additional purpose is served, namely, to help the other shareholders of plaintiff corporation.

■ The question whether this contract was intended for the direct benefit of the plaintiff corporation is one of construction and the important rule to be observed in construing the contract under review is to ascertain and give effect to the intention of the parties and this may be gleaned from the situation of the parties, the facts and circumstances attending the execution of the contract and the apparent purpose which the parties are undertaking to accomplish. Paulus v. Board of Education, Mo.App., 347 S.W.2d 425; Truck Leasing Corporation v. Esquire Laundry and Dry Cleaning Co., Mo.App., 252 S.W.2d 108. The petition clearly demonstrates that the facts and circumstances present at the time of the execution of the contract show that all of the parties to the contract were shareholders in the plaintiff corporation and that all of the parties to the contract owned all of the capital stock issued by the plaintiff corporation and outstanding at the time of the execution of the agreement. The purpose to be served by the parties executing the contract was to assure all shareholders that if any one of them desired to sell his stock, it would not be sold to strangers and that the corporation and the shareholders would continue in the management and care of the affairs of the corporation without having to adjust themselves or accommodate themselves to a new relationship with a shareholder who would be a stranger to their group. Shareholders in their agreement made it clear that they were desirous of not having strangers acquire any of the shares of stock held by any of the parties in the event of the happenings mentioned in the agreement. Defendant agrees in his brief that the purpose of the contract was to maintain a status quo as to ownership and management "of the closely held respondent corporation." With this statement we agree. Plaintiff corporation was a small corporation with a few shareholders and it appears that all of the shareholders participated to some degree in the management of the corporation, because all of the shareholders were also directors of the corporation.

In the case of State at Inf. of Huffman et al., v. Sho-Me Power Co-Operative, 356 Mo. 832, 204 S.W.2d 276, 280, the Supreme Court has said a corporation has the right to choose the persons to whom it will issue its own stock. In this case the Supreme Court was discussing the right of a corporation to place restrictions on the issuance and transfer of its stock. In discussing the restrictions under attack the Supreme Court quoted approvingly from Thompson on Corporations, 3rd Ed. Vol. 6, § 4156, p. 21, as follows:

"The rule is well settled that a provision in the charter or articles of in-

corporation that no stockholder shall sell and transfer his stock either, without the consent of all other stockholders, or that he will first offer it to the stockholders or to the corporation before selling to other persons, is binding on persons who became owners of the stock. These provisions, which really amount to agreements between the stockholders themselves, are not invalid as against public policy nor do they amount to an improper restraint of the power of alienation. *There seems to be no objection to a corporation reserving to existing members the right to choose their associates. * * *"* (Emphasis ours.) 204 S.W.2d 279.

It will be noted in this quotation that such a provision in the articles of incorporation really amounts to an agreement between the stockholders themselves. If the corporation can do this through its articles of incorporation, which in effect amounts to an agreement between the stockholders themselves, there is no reason why stockholders cannot do it among themselves and make the corporation a third party beneficiary. Such a provision in a contract confers upon the third party beneficiary a direct benefit. It assures to the corporation a continuity in its management, a continued close relationship between ownership and management, a continuation of a "close confidential relationship" which may be disrupted if a stranger is brought into their midst. Likewise, there is a danger of competitors becoming shareholders if the stock is permitted to be sold to strangers. In addition, this right, given to the plaintiff corporation, is very beneficial in that it guarantees a continuation of the harmonious relationship that, no doubt, existed between the shareholders and the corporation in the management of the affairs of the corporation.

Justice Holmes in the case of Barrett v. King, 181 Mass. 476, 63 N.E. 934, said:

"Stock in a corporation is not merely property. It also creates a personal relation analogous otherwise than technically to a partnership."

This is particularly true of a small corporation and the maintenance of a harmonious personal relationship between the corporation and its shareholders was and is highly important to the plaintiff corporation.

Another reason for our holding that the plaintiff corporation is a donee beneficiary under the contract is that the contract expressly provides that plaintiff is the first party that has a right to acquire the stock sought to be sold by a living shareholder or held in the estate of a deceased shareholder. We think such provisions clearly evidence the intention of the shareholders in executing the agreement, that this right extended to the corporation, conferred a direct benefit to the corporation and, therefore, plaintiff had a right to sue to enforce its right under the contract. Finn v. Barnes et al., 340 Mo. 445, 101 S.W.2d 718; Schoen v. Lange, Mo.App., 238 S.W.2d 902; Uhrich v. Globe Surety Co., supra; 12 Am.Jur., Contracts, § 280, p. 832.

In view of what we have said we find that the trial court did not err in overruling the defendant's motion to dismiss made prior to the commencement of the trial and this contention made by the defendant is without merit.

Defendant in his last point contends that the trial court erred in denying his motion to inspect. In his brief defendant states that he had a right to inspect the books under the provisions of § 351.215 RSMo 1959, V.A.M.S., and also under the provisions of Civil Rule 58.01, V.A.M.R.

Defendant, in his motion to inspect wherein he asked the court for an order requiring the plaintiff to produce the records described in his motion states that said records were sought on the ground that they had a material bearing upon the validity of the alleged contract and were necessary to the defendant in the preparation and presentation of his defense. There is nothing in his motion to inspect or in the record before

us that indicates he was relying on the provisions of § 351.215, supra, and reliance upon this section of the statute seems to be an afterthought of the defendant which had its birth in the brief filed in this court. The motion filed in the trial court clearly indicates that defendant was asking the trial court for an order requiring the plaintiff to produce the described records for inspection pursuant to Civil Rule 58.01, V.A.M.R. The pertinent parts of this rule are as follows:

"In addition to the right to obtain the production of any document or thing for inspection in connection with an examination under Rule 57 or interrogatories under Rule 56, any party may move the court, subject to the provisions of Rule 57.01(c), for an order upon another party (1) to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, * * * not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 57.01(b) and which are in his possession, custody, or control; * * *. The order shall specify the time, place, and manner of making the inspection and taking the copies and photographs and may prescribe such terms and conditions as are just."

This rule became effective April 1, 1960, and does not seem to have been discussed extensively in any previous case in this state. This rule incorporates by reference parts of Rule 57, namely, 57.01(b) and 57.01 (c). Rule 57 deals with the taking of a deposition. 57.01(b) indicates the scope of the examination and by reference becomes a part of Rule 58.01. The pertinent parts of Rule 57.01(b) provide as follows:

"Unless otherwise ordered by the court as provided by this Rule, the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, * * * and the identity and location of persons having knowledge of relevant facts. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence. * * *"

The pertinent part of subdivision (c) of Rule 57.01 is the following:

"* * * [T]he court may make any other order which justice requires to protect the party or witness[es] from annoyance, embarrassment, or undue expense, oppression or to compel a witness or party to make discovery."

The Committee Note appearing under Civil Rule 58.01, V.A.M.R., states that this rule is amended Rule 34 of the Federal Rules of Civil Procedure as redrafted and submitted by the Advisory Committee. The note continues: "The amended rule set out above (1) incorporates the broadened scope of discovery; (2) simplifies the practice by eliminating the showing of 'good cause'; (3) substitutes for the 'good cause' showing the power to protect the respondent from annoyance, undue expense, embarrassment or oppression." However, the present Rule 34 of Federal Rules of Civil Procedure does not contain the suggestion of the Federal Advisory Committee to eliminate the former requirement that the parties seeking inspection should show "good cause" therefor. The present Federal Rule 34 requires the party seeking inspection to show "good cause" therefor and in that respect differs from our rule 58.01, V.A.M.R.

■ Discovery is not a matter of right. Barron and Holtzoff, Vol. 2A, Federal Practice and Procedure, § 803, pp. 471–472. Despite the liberality with which this rule should be construed, we do not think that

the granting of the order requested follows as a matter of course and is a mere automatic procedure; nor was the rule intended to approve indiscriminate inspection of papers and records of the opposing party. As we shall show later, the papers and records sought must be relevant and not privileged. The rule obviously contemplates an exercise of judgment by the court. We think that the movant, before he is entitled to a sweeping discovery, must show in his motion or otherwise reasonable grounds to believe that the records sought are relevant to the subject matter involved in the pending action.

■ Looking to the grounds stated in defendant's motion to inspect we find them to be mere legal conclusions and under the authorities discussing the old rules covering the right to production of records and inspection thereof mere legal conclusions that the documents sought have a material bearing upon the validity of the alleged contract and are necessary in the preparation of defendant's defense were held insufficient, because they were mere conclusions. State ex rel. St. Louis Union Trust Co. v. Sartorious, 351 Mo. 111, 171 S.W.2d 569, loc. cit. 573. However, we think there is a more cogent reason for affirming the trial court's action. It seems quite clear that none of the documents sought were relevant to the subject matter involved in this action, namely, the contract. We think that movant (defendant) still has the burden of showing to the court that the records he seeks to examine are relevant to his defense against the contract in this action. In this sense the applicant has the burden. State ex rel. Missouri Broadcasting Co. v. O'Malley, 344 Mo. 639, 127 S.W.2d 684, loc. cit. 686; State ex rel. Boswell v. Curtis, Mo.App., 334 S.W. 2d 757, l. c. 761.

■ The purpose of Civil Rule 58.01 is to make relevant, non-privileged documents, papers and records in possession of one party available to the other, and thus to expedite the trial of cases. Civil Rule 57.01 (b) describes the scope of the examination at the taking of a deposition, and by reference is to be read in conjunction with the provisions of Rule 58.01 and controls the scope of discovery and production of documents, papers and records called for under said Rule 58.01. Therefore, the right of discovery under Rule 58.01 is as broad as the scope of examination permitted by Rule 57.01(b). The right of discovery, therefore, under Rule 58.01 is limited to matter not privileged which is relevant to the contract involved in the instant action, with the proviso, that the fact that the material sought to be inspected will be inadmissible at the trial is no ground for objection if the matter sought to be discovered appears reasonably calculated to lead to the discovery of admissible evidence. Therefore, it is encumbent on the trial court to find, before it grants the discovery, that the matter sought to be produced and inspected is relevant to the contract in this action and appears reasonably calculated to lead to the discovery of admissible evidence. Documents and records that would not aid in the discovery of admissible evidence are not within the scope of the examination permitted under subdivision (b) of Rule 57.01.

In the instant action the subject matter is the contract executed by the shareholders of plaintiff corporation. It must be kept in mind that the plaintiff was not a party signatory to the contract in question, but was a mere beneficiary under said contract and through that status it received a direct benefit. The only issue before the court was whether or not plaintiff was a beneficiary who had the right to enforce the provisions of the contract designed to be of direct benefit to it. We see no possibility that the discovery sought by defendant may in any way be relevant to the subject matter of the action, namely, the contract, which is the basis of plaintiff's action and was executed by the shareholders of plaintiff corporation. While the trial court did not give any reasons for its ruling, wherein it denied the right of defendant to inspect the records described in his motion, it seems reasonable to say that the trial court could have also

found that the great variety of records sought for the years 1956 through 1960 constituted an annoyance or oppression to the plaintiff, which is a protective order permitted under subdivision (c) of Rule 57.01. Any of the aforesaid findings by the trial court would have formed a reasonable basis for its action. We find no reason to hold that the trial court erred in overruling defendant's motion to inspect.

In the argument portion of his brief defendant referred to the provisions of § 351.-390 RSMo 1959, V.A.M.S., without stating in what respect he would be injured by a possible violation of this section of the statute. This section of the statute specifically gives authority to corporations to purchase their own stock if such purchase will not impair their stated capital. Burg v. Bonne Terre Foundry Co., Mo.App., 354 S.W.2d 303, 1. c. 306. It can be assumed that plaintiff will not violate the statutes in its effort to enforce the provisions of the contract. State at Inf. of Huffman v. Sho-Me Power Co-Operative, 356 Mo. 832, 204 S.W.2d 276, loc. cit. 280. The answer of defendant did not charge any illegality in this respect. However, we are at a loss to understand why the defendant, who has the duty of obtaining the best price possible for the assets of the estate he administers, would seek to show that the capital stock of the plaintiff corporation was worth less than the $400 per share offered by the plaintiff, or that the payment of the sum offered would reduce the net assets of plaintiff below its stated capital. This would be the result achieved if he was successful in showing that plaintiff violated the provisions of § 351.390, supra. At the trial defendant's testimony indicates that he thought the price offered by the plaintiff was insufficient.

We find no error, therefore, the judgment of the trial court should be affirmed. It is so ordered.

SAM C. BLAIR and PHIL H. COOK, Special Judges, concur.