**Joannie Barclay Grant ROSE, Timothy Hall Dunn, Mary Ann Dunn Thorngate, Appellants,**

v.

**E. Kile HOWARD, Jr., Executor of the Estate of Joseph E. Schuetz, Respondent.**

No. WD 33936.

Missouri Court of Appeals, Western District.

April 24, 1984.

Fred L. Slough, Kansas City, John A. Holtmann, Shawnee Mission, for appellants.

David T. Greis, Kansas City, for respondent.

Before TURNAGE, C.J., and MANFORD and LOWENSTEIN, JJ.

TURNAGE, Chief Judge.

This is a suit for specific performance of an agreement to assign Indian headrights. The trial court declined to order specific performance.

The contention now made is that the agreement should have been specifically performed because it was supported by a valuable consideration. Affirmed.

This suit was instituted by Joannie Barclay Grant Rose, Timothy Hall Dunn, and Mary Ann Dunn Thorngate against the executor of the estate of Joseph E. Schuetz. Joannie, Timothy, and Mary Ann are grandchildren of Dora Dunn Schuetz. Dora, an Osage Indian of ⅝ blood, was married first to Dr. Dunn. Three children were born of that marriage; Marie, Ida Grant, and Timothy J. Marie is not involved in this case because she died before Dora without leaving children.

Dr. Dunn died at a date not shown in the record and, subsequently, Dora married Jo-

seph Schuetz, on April 24, 1920. There were no children born of her marriage to Joe.

Dora's son, Timothy J., died and left two children, Timothy H. and Mary Ann, plaintiffs in this action. Ida had two children, Constance, known as Nancy Grant Powell, and Joannie Grant Rose. Of these two children, only Joannie is a plaintiff in this action.

Dora died in October of 1966, survived by her husband, Joe, her daughter, Ida, and the two children of her deceased son, Timothy J., Timothy H. and Mary Ann. Dora had executed a number of wills, but only those executed in 1963 and in 1956 figure in this law suit. The 1963 will made provision for the two minor children of Nancy Powell, whereas the 1956 will did not. A guardian ad litem was appointed for the two minor children, Julie and Robert, and an application was filed to admit the 1963 will to probate. Pursuant to federal law, the will which involved an Osage Indian was probated in Osage County, Oklahoma. "Headright" is a term commonly used to describe the interest each member of the Osage Indian Tribe has in the mineral, oil, and gas royalties paid by the United States Government for the development of those assets on the Osage Reservation in Osage County, Oklahoma. Each member of the tribe was given an allotment number. These headrights can pass by will or intestate succession to a person of Indian blood. Joe and Dora were married prior to the enactment of a federal statute which prohibits non Indians from inheriting all or any portion of headrights. Consequently, the parties agree that Joe was eligible to receive headrights from Dora's estate.

After the guardian ad litem sought to admit the 1963 will to probate, an agreement was entered into between Joe, Ida, Timothy H. and Mary Ann, and the guardian ad litem for the Powell children. It is this agreement which Joannie, Timothy H. and Mary Ann attempt to have specifically performed. By this agreement, dated November 17, 1967, the Powell minors were to receive a sum of $7,000, and the application

to probate the 1963 will was to be withdrawn. The agreement recited that it was doubtful Dora possessed testamentary capacity to execute the 1963 will. The agreement also recited that Joe agreed that he had, or would, execute an assignment of the headright interest which he would receive from the estate of Dora to the four grandchildren of Dora, to-wit: Joannie, Nancy, Timothy H. and Mary Ann. The assignment in equal shares was to become effective upon Joe's death.

An agreement identical to that of November 17, 1967, was entered into on January 6, 1968. The 1968 agreement bears the approval of the superintendent of the Osage agency.

Subject to the just mentioned agreement, application to probate the 1963 will was withdrawn and an application was filed to probate the 1956 will. At a hearing held in Osage County, Oklahoma, before the field solicitor of the Department of Interior on the admission of the 1963 will, Joe testified that it did not matter to him which will was admitted to probate because he intended to elect to take against the will. True to his word, Joe elected to take against the 1956 will and received a one-third interest in Dora's property. Dora died possessing 2.68750 headrights which she had acquired from various relatives throughout her 88 years. Joe received .89583 headrights as his one-third interest. The income from Joe's fractional headright interest increased from about $2,600 in 1970 to about $24,200 in 1980.

The parties stipulated that pursuant to Joe's agreement to assign his headright interest to his four step-grandchildren a law firm in Osage County, Oklahoma prepared an assignment for Joe. An undated assignment signed by Joe is in evidence but was accepted only by Timothy H. and Nancy and was not approved by the superintendent of the Osage Indian agency. The assignment signed by Joe stated the consideration to be love and affection. Also introduced was an unsigned assignment on a printed form, which also showed the consideration to be love and affection.

The record reveals that Ida died in 1974 or 1975, and that Joe died in October of 1977. Joe left a will in which he devised his headright interest to Nancy Powell for life with remainder to her children. He also devised the sum of $1,000 to Joannie and five dollars each to Timothy H. and Mary Ann. This suit for specific performance was filed thereafter.

During the trial of this case, Timothy H. and Joannie testified that Joe's promise to assign his headright interest to them and to Nancy and Mary Ann in equal parts was important and explained their willingness to sign the 1967 and the 1968 agreement. Each testified that he or she understood that Joe signed the agreement to avoid a contest over the 1963 will and to get Dora's estate closed in an expedient manner.

With the exception of the testimony of Timothy and Joannie just mentioned, the facts heretofore recited are contained in a stipulation of facts which the parties filed. That stipulation concluded that the only issue for the court to decide was whether or not there was consideration for Joe's promise contained in the 1967 and 1968 agreement to execute an assignment of his headright interest to the four step-grandchildren. The stipulation was later amended to allow the estate to raise certain defenses.

In addition to the stipulation of facts, the voluminous legal file contains many exhibits which were before the trial court. The trial court entered 87 findings of fact and 15 conclusions of law. The court concluded that, except for love and affection, no consideration was given for the agreement of Joe to assign his headright interest to the four step-grandchildren. The court concluded that this consideration was insufficient as a matter of law. The court also concluded that elements of fraud, mistake and undue influence, and of reliance on a confidential relationship were evident in the record. Joannie, Timothy, and Mary Ann contend that the finding that the sole consideration for Joe's agreement to assign his headright interest was love and affection is not supported by the evidence. In

support of this argument they cite first, the fact that Joe avoided the anticipation of a lengthy and expensive will contest, and second, the importance to each of them of Joe's promise.

Although the facts in this case are rather lengthy, the legal proposition involved is actually simple. That is, the issue to be resolved is whether the evidence supports the court's finding that the only consideration for Joe's agreement was love and affection.

Clearly, the agreement does not state any consideration flowing to Joe for his promise to make a future assignment of his headright interest. The agreement does state that he has made such an assignment or will in the future. Of course, if he already had executed the assignment at the time the agreement was executed such prior act could not constitute consideration. As for the promise to make an assignment in the future, Joannie contends that under § 431.020, RSMo 1978, all instruments in writing whereby there is a promise to pay any sum of money or property shall import a consideration. In *Missouri Wesleyan College v. Shulte*, 346 Mo. 628, 142 S.W.2d 644, 647–48[5] (1940), the court held that the term:

"[I]mport a consideration," as used in the statute means, in the absence of evidence on the point, that it will be presumed that there was a sufficient consideration and the burden of proof on the question is on the party denying the existence of consideration.

All parties agree that the statute applies to the agreement in this case. Assuming without deciding that the statute does apply, the point will be considered in the light of the statute.

Consideration, or lack thereof, may always be shown by extrinsic evidence in a controversy between the original parties to an agreement even if the evidence tends to vary the consideration stated in the agreement. *Greer v. Nutt*, 54 Mo.App. 4, 7 (1893). In *Gershon v. Ashkanazie*, 199 S.W.2d 38, 46[5–7] (Mo.App.1947), this

court discussed the statute here involved and held that upon denial of the existence of consideration it is necessary for the promisor to establish his claim by a clear preponderance of credible evidence and the proof must be cogent and convincing. See also *Empire Gas Corp. v. Small's LP Gas Co.*, 637 S.W.2d 239, 246 (Mo.App.1982). Joannie contends there is no substantial evidence to support the court's finding that the estate met its burden of showing the nonexistence of consideration for Joe's promise.

Absent a recital of consideration in the agreement, other proof relating to the absence of consideration must be examined. The only evidence on the subject which can be attributed directly to Joe reveals that he signed an assignment form after the agreement was made in which the consideration for the assignment was stated to be love and affection. It is significant that the assignment made no mention of the agreement nor of the existence of consideration other than love and affection. This assignment was signed not only by Joe but also by Timothy and Nancy. They had full knowledge that the assignment recited only love and affection as its consideration, yet no evidence suggests that they protested that the agreement failed to refer to other agreed upon consideration for Joe's promise.

In Joannie's brief she points to her testimony and Timothy's at the trial of this case to the effect that Joe signed the agreement in order to avoid a lengthy, expensive will contest. It should be observed that the trial judge, as arbiter of the facts, was free to disbelieve this oral testimony, even though it was uncontradicted. *Empire Gas,* 637 S.W.2d at 246. This is especially true in view of the fact that Joannie did not file this lawsuit until some nine years after the agreement was executed and following Joe's death. Memories fade in time, and Joe's reason for signing the agreement became a matter of conjecture after his death. Further countering Joannie's and Timothy's testimony is the testimony of Joe before the field solicitor in a hearing held on the application to admit the 1963 will to probate. Joe testified that he did not care which will was probated because he intended in any event to file his election to take against the will. Thus, Joe had no monetary interest in avoiding a will contest since he would receive one-third of the estate regardless of which will was probated.

It is further significant that the agreement the plaintiffs seek to have enforced was not entered into for the purpose of obtaining Joe's agreement to make an assignment of his headright interest. The purpose of the agreement was to obtain the withdrawal of the application to admit the 1963 will to probate and to pay the Powell minors $7,000 to obtain that result. The portion concerning the assignment of Joe's headright interest appears totally unrelated to the agreement with no stated connection thereto. It simply appears in a single paragraph and no mention is made of it in any other part of the agreement.

Joe, along with Timothy and Nancy, signed an assignment in which love and affection was stated to be the sole consideration. In addition, as noted above, the assignment paragraph is unrelated to the remainder of the agreement. The above, coupled with Joe's testimony to the field solicitor, clearly constitutes substantial evidence to support the court's finding that the only consideration for Joe's promise to make a future assignment of his headright interest was love and affection. Such evidence also satisfies the burden of proof stated in *Gershon,* supra.

■ The court properly concluded that love and affection was insufficient consideration for Joe's promise. The general rule is that love and affection will not support an unexecuted contractual promise. *Walters v. Calderon,* 25 Cal.App.3d 863, 102 Cal.Rptr. 89, 95[5] (1972). See generally 17 C.J.S. Contracts § 91, p. 778 (1963).

Joe's estate offers other reasons for declaring Joe's promise invalid. The estate suggests that the agreement was induced by fraud and undue influence and that Joannie was guilty of laches. The court found each of these elements, and those

seeking specific performance briefed each one in an attempt to demonstrate that none of these grounds is sufficient to declare the promise invalid. It is not necessary to discuss these grounds because the finding that Joe's promise was not supported by a valid consideration disposes of the validity of the promise. It is irrelevant whether there were other grounds upon which the promise could be held invalid.

In the alternative, Joannie contends that Joe's promise to assign headrights may be upheld on the theory of promissory estoppel. This court fully explained the doctrine of promissory estoppel in *Katz v. Danny Dare, Inc.*, 610 S.W.2d 121 (Mo. App.1980). In short, no evidence was presented to show the existence of the requirements necessary to invoke this rule.

Joannie's final contention points to error in excluding evidence which pertained to statements made by Ida prior to the execution of the agreement. Rule 73.-01(a)(1) provides that when evidence is ruled inadmissible in a court tried case the court, on request, shall take and record the evidence in full. No such request for an offer of proof was made when the court sustained an objection to questions concerning statements made by Ida. In *Stringer v. Reed*, 544 S.W.2d 69, 78[19] (Mo.App.1976), the court stated: "Reversible error cannot be predicated on the exclusion of a proper question where there is no offer of proof that the answer would have been in favor of the complaining party."

Further, Joannie's brief fails to state in what way the court's ruling excluding Ida's statements affects the judgment under the scope of review stated in *Murphy v. Carron*, 536 S.W.2d 30, 32[1-3] (Mo. banc 1976). *State ex rel. Williams v. Williams*, 609 S.W.2d 456, 458, note 2 (Mo. App.1980).

The estate has met its requisite burden under either the *Gershon* test or the *Murphy* test. The judgment is supported by substantial evidence, and a review of the voluminous record does not show the judgment to be against the weight of the evidence or that the court misapplied the law. The judgment is affirmed. *Murphy*, supra.

All concur.