LEE HUNTER, Appellant, v. W. H. GARANFLO.

Division One, November 30, 1912.

CORPORATIONS: Mercantile: Ultra Vires Contract: Mortgage of Real Estate. A mortgage conveying the real estate of a mercantile corporation as security for notes given in payment for shares of its own stock purchased either by the corporation itself or by its president, is *ultra vires* and void.

Appeal from Ste. Genevieve Circuit Court.—*Hon. Charles A. Killian*, Judge.

AFFIRMED.

*John A. Hope* for appellant.

*W. H. Miller* for respondent.

BROWN. C.—This is a suit by appellant against the respondent as assignee under the insolvent laws of the State of Missouri of the Mathewson Mercantile Company, a Missouri business corporation, engaged in the business indicated by its name. Its object is to enforce the lien of a mortgage executed by the corporation February 17, 1902, in which A. G. Mathewson, Lizzie Mathewson and Mabel Mathewson join, conveying the real estate of the corporation to secure the payment to the plaintiff of three notes aggregating $11,700, of the same date and signed by the same parties; and also other notes of the same parties to the People's Bank, aggregating $5947.26. This bank was a private bank owned by plaintiff and one Albert Hunter. This suit involves the three Hunter notes only.

The mercantile company was incorporated in 1901 with a capital stock of $20,000, $10,000 of which was subscribed by the plaintiff, $9000 by A. G. Mathewson and $1000 by his wife, who is one of the makers

of the notes and mortgage in question.  The grantors in the mortgage, other than the corporation, are described as "all the stockholders of the said corporation."  The Hunter notes were given in payment for the $10,000 of stock subscribed and owned by Hunter, and which was in this transaction transferred to A. G. Mathewson.

Although other questions of interest were raised upon the trial, the case is submitted here upon the sole question as to whether or not the mortgage constitutes a valid lien upon the real estate of the corporation for the security of the Hunter notes, so that if that question can be answered in the affirmative this judgment should be reversed and such judgment entered here as should have been entered in the trial court, or the cause remanded for further proceedings.  If it be answered in the negative, the judgment should be affirmed.

The object and effect of the Constitution and laws of this State with reference to corporations seem to be to permit and encourage the investment of the money of the people in business enterprises under corporate management, without the incurring of any personal liability beyond the full payment for the stock subscribed or otherwise owned by the members of the association.  That this plan has been of great benefit to the State, permitting as it does the free employment of the private means of all, including the helpless classes, in active business operations, without the danger of other loss than of the capital invested, will be disputed by none.  That the State should carefully safeguard such investments made with its encouragement, so that the fund which it permits to be substituted for personal liability will be carefully preserved and scrupulously devoted to that purpose, is equally evident.  To this end it is provided by the Constitution that, "No corporation shall issue stock or bonds, except for money paid, labor done or prop-

erty actually received'' (Art. 12, Sec. 8), and that ''No corporation shall engage in business other than that expressly authorized in its charter or the law under which it may have been or hereafter may be organized'' (*Id.*, Sec. 7). It is futile to say that these provisions are for the benefit of stockholders exclusively.

They are both directed against the stockholders and are primarily intended for the benefit of the public, by securing, as far as possible, the integrity of the fund for the protection of those who may deal with it, as well as those who may become the purchasers of its stock upon the faith of the representations made in the act of its incorporation. The withdrawal of this fund, or any part of it, by the stockholders, otherwise than under the sanction of the law in conformity with which it is created, or its application to other uses than those authorized by the laws under which the corporation exists, is a clear violation of the policy of the State as expressed in its Constitution.

In this case the plaintiff is asking the aid of the court to enable him to appropriate to himself more than half the entire property of an insolvent mercantile corporation, under a mortgage given by it to secure its note for $11,700, given him in consideration of the purchase of half its own capital stock of the par value of $10,000. This note and the mortgage securing it are signed by the stockholders owning the other half, and the evidence seems to indicate that one of them is the real purchaser.

The laws enacted in pursuance of the constitutional provisions we have quoted, require that the fund represented by the capital stock of the business corporation shall have been provided at the time of its incorporation, and that at least one-half of it shall consist of lawful money of the United States in the custody of the persons constituting its first board of directors. [R. S. 1909, Sec. 3339.] This may only be diminished in the manner prescribed (*Id.*, Sec. 3354),

which describes definitely the precautions which shall be taken to preserve the integrity and sufficiency of the remaining capital, and the publicity to attend the change. The condition of its capital at the time of such change must be spread upon the public records as fully as in the original organization and incorporation. If the corporation was the purchaser in this case the effect of the transaction will be not only to reduce the capital stock of the company by one-half, but to withdraw from it property greater in value than one-half its original capital, if the plaintiff's lien should be enforced. This would be in violation of both the letter and the spirit of the provisions of the Constitution and statutes to which we have referred, and is contrary to the sound public policy clearly indicated by these laws. An executory contract of such a character ought not to find favor in our courts. The question is not now before us as to whether a corporation may not, under some circumstances, lawfully become the owner of shares of its own capital stock, but no such circumstance enters into this case. This general question has been frequently presented to the courts for adjudication, both in this country and in England, and its decision has most frequently turned upon the force and effect of controlling statutory provisions in the several jurisdictions. Much learning has been collected upon the subject in a note to the Alabama case of Hall v. Henderson, 61 L. R. A. 621, as well as in the briefs of the several counsel in the principal case, which the writer has read with much interest and profit, and the general tendency of which is in accordance with the conclusion at which we have arrived; but we are controlled alone by the terms of our own Constitution and statutes which it is our peculiar duty to enforce.

The plaintiff is in no better situation if, as indicated by some of the evidence, Mr. A. G. Mathewson, its president, was the purchaser of the stock for which

the corporation is called upon to pay. It was forbidden by the Constitution to engage in any business not *expressly* authorized by the law under which it was organized, and the purchase of its own stock under the circumstances of this case was not expressly authorized by the law of its existence, but was expressly forbidden; so that the contracts in controversy would constitute an attempt to pledge the assets of the corporation in a transaction entirely beyond its corporate powers. If it be said that the power of the corporation in such a case does not depend upon its power to do the thing which is the ultimate object of the transaction, but upon its power to become a surety for its stockholder, regardless of the nature of the transaction which is the subject of the suretyship, we find it equally well settled that it has no authority to so use its credit for the benefit of others. [2 Purdy's Beach on Private Corporations, Sec. 853.]

The mortgage which constitutes the foundation of this proceeding being *ultra vires* the corporation and void, it results that the judgment of the New Madrid Circuit Court should be affirmed, and it is so adjudged.

PER CURIAM.—The foregoing opinion of Brown, C., is adopted as the opinion of the court. All the judges concur.