STATE OF MISSOURI at the Information of M. J. HUFFMAN, Prosecuting Attorney of Wright County, Missouri, ex officio, and at the Information of M. J. HUFFMAN, Prosecuting Attorney of Wright County, Missouri, at the Relation of W. D. FREEMAN and C. H. CRAMER, Informant, v. SHO-ME POWER CO-OPERATIVE, a Corporation, Respondent, ARKANSAS-MISSOURI POWER COMPANY, EMPIRE DISTRICT ELECTRIC COMPANY and MISSOURI UTILITIES COMPANY, Intervenors, SHO-ME POWER CORPORATION, Respondent-Intervenor.—No. 38883.—204 S. W. (2d) 276.

Court en Banc, July 31, 1947.

*Henry C. Salveter* and *Gregory C. Stockard* for respondent Sho-Me Power Cooperative and respondent-intervenor Sho-Me Power Corporation.

*R. B. Oliver, Jr., R. K. McPherson* and *A. Z. Patterson* for intervenors.

837

CLARK, J.—Original proceeding in this court in the nature of quo warranto to oust respondent, Sho-Me Power Co-Operative, from operating as a public utility corporation in generating, selling and distributing electric energy. That company, hereafter called Co-Op, had been incorporated under our statutes authorizing the formation of corporations to conduct agricultural or mercantile business on a co-operative plan. On January 14, 1946, we rendered an opinion [354 Mo. 892, 191 S. W. (2d) 971] holding that Co-Op could not legally conduct the business of a public utility. We issued a writ of ouster,

but granted Co-Op one year to reorganize, if it so desired, and we reserved jurisdiction. Later we extended the time for reorganization "until the further order of this court."

In February, 1947, the incorporators of Co-Op formed a new corporation, Sho-Me Power Corporation, hereafter called Sho-Me. It was incorporated under the General and Business Corporation Act of Missouri. [Laws 1943, p. 410, et seq., Mo. R. S. A., 1946 Supp.; sec. 4997.1 et seq.] Co-Op and Sho-Me entered into an agreement, subject to the approval of the Missouri Public Service Commission, whereby Co-Op is to transfer all its property, franchises and certificates of convenience and necessity to Sho-Me, and the latter is to assume all the debts and obligations of Co-Op, including Co-Op's debt to the United States, the balance of which is $2,440,651.00 for which Sho-Me is to execute its note and deed of trust to the Government.

Co-Op petitioned this court for approval of its proposed plan of reorganization and for a decision that Sho-Me has corporate power to assume and fulfill the obligations of Co-Op as a public utility. With the petition it submitted copies of Sho-Me's articles of incorporation, certificate of incorporation, certificate to commence business, its by-laws, copies of the contract of sale and of the proposed note and deed of trust to the Government.

Sho-Me asked and was granted leave to intervene. Its articles of incorporation authorize the issuance of 25,000 shares of the par value of $5.00 per share. It has issued 108 shares and will commence business with a paid up capital of $540.00. The contract of sale referred to above recites that the Government had agreed to loan Co-Op $4,275,000.00 and had loaned it $2,504,000.00 secured by deed of trust.

Three public utilities, Arkansas-Missouri Power Company, Empire District Electric Company, and Missouri Utilities Company, hereafter called Objectors, have, with leave, filed objections to the plan of reorganization, which may be stated as follows:

That Sho-Me is not validly incorporated under the General and Business Corporation Act and is, in fact, a co-operative.

That the Act does not permit the inclusion in the charter of a business corporation of such a provision as number three of Sho-Me's articles of incorporation, which is as follows:

"The Corporation shall have authority to issue its shares only to incorporators and to purchasers of electric energy from the Corporation. The Corporation shall not issue more than one share to any such purchaser who is not an incorporator, nor more than twelve shares to an incorporator.

"No shareholder shall transfer, alienate, or in any way dispose of any share of the Corporation unless such share shall first have been offered for sale to the Corporation. The Corporation reserves and shall have the exclusive right and option to purchase such share at a price equal to the par value thereof within thirty days after such

offer. After the expiration of such time, the shareholder, if the Corporation shall not have exercised its option to purchase such share, shall be free to transfer, alienate or otherwise dispose of such share without any restriction whatsoever."

That the whole plan of reorganization is that of a cooperative enterprise and not of a business corporation. That the paid up capital of $540.00 is grossly inadequate for the assumption of a debt of $2,504,000.00 and for engaging in a large business enterprise.

We agree with Objectors that the mere statement in Sho-Me's charter that it is incorporated under the General Business and Corporation Act is not binding on the courts. That is to be determined by the objects and powers conferred by the charter. [18 C. J. S., p. 400, sec. 22b.]

Objectors attack the restrictions on the issuance and transfer of stock contained in number three of Sho-Me's articles of incorporation, saying that such restrictions are expressly authorized by our Rural Electric Cooperative Act, [R. S. Mo. 1939, sec. 5394; Mo. R. S. A.] but are not permitted to business corporations by the Act under which Sho-Me is purportedly incorporated. Those restrictions authorize the corporation to issue shares only to incorporators or purchasers of electric energy, and prevent an owner from selling a share to another without first giving the corporation a thirty day option to buy at par. Objectors argue that the restrictions are not authorized by statute and constitute an unreasonable restraint of trade.

None of the authorities cited by Objectors on this branch of the case is precisely in point. In O'Brien v. Cummings, 13 Mo. App. 197, the St. Louis Court of Appeals held that a provision in a corporate charter was void which read "No person shall subscribe, own, or hold more than ten thousand dollars worth of said stock, estimating the same at the par value of each share." That was a complete restraint on trade, while the provision in Sho-Me's charter is only a partial restraint in the form of an option to purchase within a limited time. Also, as we will later point out, the powers of a corporation with reference to the transfer of its stock are greater under our present statutes than under the statutes in force when the above case was decided.

In Brinkerhoff-Farris Trust & Savings Co. v. Home Lumber Co., 118 Mo. 447, 24 S. W. 129, a by-law adopted by the directors of a corporation, to the effect that an owner could not sell his shares to another without first offering them to the directors and paying all his dues to the company, was void. The statute authorized the directors to make by-laws for certain specified purposes only and the by-laws did not come within the statute. By way of obiter the opinion says "the company itself had no right to pass such a by-law." In Carroll v. Mullanphy Savings Bank, 8 Mo. App. 249, a by-law, passed by the directors, forbade the transfer of stock on the books of the bank if the owner was indebted to the bank. Held, there was no showing

that the directors had authority to pass the by-law, the charter of the company not being shown in evidence and the authority to pass such a by-law not being provided by statute. In Hunter v. Garanflo, 246 Mo. 131, 151 S. W. 741, a mortgage of a corporation for purchase of its own stock, which constituted a withdrawal of a substantial part of its assets was held void. The cases of David v. Fry. Mfg. Co., 209 Mo. App. 134, 236 S. W. 1103, Wilson v. Torchon Lace & Mercantile Co., 167 Mo. App. 305, 149 S. W. 1156, Robinson v. Wangemann, 75 Fed. (2d) 756, and Botz v. Helvering, Com. Int. Rev., 134 Fed. (2d) 538, and other cases cited by Objectors, involved impairment of assets by corporations purchasing their own stock. Title Guaranty Trust Co. v. Sessinghaus, 325 Mo. 420, 28 S. W. (2d) 1001, questions the reasoning in Hunter v. Garanflo and Wilson v. Torchon Lace & Mercantile Co., and says they would have rested on safer grounds if confined to the proposition that a corporation cannot legally purchase its own stock *out of its capital assets*. Thompson on Corporations, 3rd Ed., sec. 1129, cites cases to the effect that a *by-law*, of a corporation providing that a shareholder must first offer his stock to the corporation before he can sell to others, is void as being an unreasonable restraint of trade. But those cases and other cases cited by Objectors were ruled under statutes which gave corporations only the power to "regulate" the transfer of their stock. Thompson recognizes the difference between "regulation" and "restrictions," for in the same section he says, "The inquiry would naturally be directed to the proposition as to whether or not the intended regulation is actually and really a restriction." In the section quoted Thompson was speaking of a restriction which may be provided in a corporation by-law and not one which may be stated in the articles of incorporation, for in the same work, Vol. 6, p. 21, sec. 4156, he says:

"The rule is well settled that a provision in the charter or articles of incorporation that no stockholder shall sell and transfer his stock either, without the consent of all other stockholders, or that he will first offer it to the stockholders or to the corporation before selling to other persons, is binding on persons who become owners of the stock. These provisions, which really amount to agreements between the stockholders themselves, are not invalid as against public policy nor do they amount to an improper restraint of the power of alienation. There seems to be no objection to a corporation reserving to existing members the right to choose their associates. . . ." It is apparent that a provision in a by-law, passed by less than all the stockholders, does not present the same question as a provision in a charter known to every investor when he buys his stock. Now the General and Business Corporation Act [Sec. 4997.12] authorizes corporations to place limitations and restrictions on the issuance of shares, and [Sec. 4997.50] such limitations and restrictions must be stated in the charter. The Uniform Stock Transfer Act [Laws of

Missouri 1943, p. 495, Mo. R. S. A., 1946 Supp., sec. 5563.15] says: "There shall be no lien in favor of a corporation upon the shares represented by a certificate issued by such corporation and there shall be no restriction upon the transfer of shares so represented by virtue of any by-laws of such corporation, or otherwise, *unless the right of such corporation to such lien or the restriction* ▇▇▇ *is stated upon the certificate.*" [Emphasis ours.] "Restriction" means more than "regulation." Webster's International Dictionary says it is "A regulation which restricts or restrains," and gives as an example "A limitation on the free use of land."

It is clear that under present statutes a business corporation can place some restriction on the transfer of its share if such restriction is authorized by the charter and stated on the stock certificate. It cannot completely restrain a transfer, but we cannot hold that retention of an option by the corporation to purchase within a reasonable time is void. Objectors do not claim that a corporation is entirely without power to purchase its own stock. The General and Business Corporation Act expressly grants that power provided the net corporate assets are not reduced below the stated capital. [Mo. R. S. A., 1946 Supp, sec. 4997.5] In the instant case Sho-Me does not bind itself to purchase any share and we cannot assume that it will do so in violation of the statute. Recent decisions uphold restrictions on the sale of corporate stock like those involved here. [State ex rel. Manlin v. Druggists' Addressing Co. (Mo. App.), 113 S. W. (2d) 1061; Scruggs, Vandervoort & Barney Bank v. International Shoe Co., 227 Mo. App. 378, 52 S. W. (2d) 1027; People ex rel. Rudaitis v. Galskis, 233 Ill. App. 414; Hulse v. Consolidated Mining Corp., 65 Idaho 768, 154 Pac. (2d) 149; 18 C. J. S., sec. 391; In re Laun, 146 Wis. 252; Rychwalski v. Milwaukee Candy Co., 205 Wis. 193, 236 N. W. 131; Bloomingdale v. Bloomingdale, 177 N. Y. Supp. 873; Doss v. Yingling, 95 Ind. App. 494, 172 N. E. 801; Nicholson v. Franklin Brewing Co., 82 Ohio State 94, 91 N. E. 991; Mason v. Mallard Telephone Co., 213 Iowa 1076, 240 N. W. 671.]

▇▇ The other restriction in section three of Sho-Me's charter confines its authority to issue shares to incorporators or purchasers of electric energy. In Sho-Me's brief this is interpreted to refer only to shares which the corporation may own and not to shares which may be purchased from shareholders. This seems a reasonable interpretation when considered with the further provision in the same section giving a shareholder, after the corporation has failed to exercise its option to purchase, free rein to dispose of his shares and assign his certificates to anyone whether or not he be an incorporator or purchaser of electric energy. Certainly a corporation has the right to choose the persons to whom it will issue its own stock. [14 C. J., p. 838, sec. 1274; 13 Am. Jur., p. 407, sec. 329; 18 C. J. S., p. 762, sec. 286.]

Objectors urge that restrictions on the issuance and transfer of stock are common in cooperative and non-profit corporations. That is true. and the restrictions in such companies are more rigid than those contained in Sho-Me's charter. But because certain restrictions are compulsory as to cooperatives does not prevent somewhat similar provisions being voluntarily adopted in charters of business corporations, provided they are authorized by statute.

Sho-Me is organized as a business corporation for profit to supply electric energy to the public generally, not alone to its members. It is subject to regulation, supervision and taxation as a public utility. Its charter contains nothing to prevent the payment of dividends.

Objectors argue that Sho-Me's paid up capital of $540.00 is grossly inadequate for the assumption of a debt of $2,504,000.00 and for engaging in a large business enterprise.

The General and Business Corporation Act authorizes a business corporation, such as Sho-Me, to commence business with a paid up capital of not less than $500.00. Sho-Me's paid up capital is $540.00. That does not necessarily indicate the value of its assets. There is no proof here as to the value of such assets and that question is not relevant to the issues here presented. In this quo warranto proceeding we are concerned only with whether Sho-Me is properly incorporated to carry on its contemplated business as a public utility. Matters of regulation and supervision must be left for the Public Service Commission to determine within its statutory jurisdiction.

For the reasons stated, the exceptions of the three intervenors [herein termed Objectors] to the plan of reorganization submitted by Co-Op and Sho-Me are hereby overruled and the plan of reorganization is hereby approved. All concur, except *Conkling, J.,* not sitting.