Virginia F. WITTE, Appellant,

v.

BEVERLY LAKES INVESTMENT COMPANY and Social Target and Hunting Club, Respondents.

No. WD 37153.

Missouri Court of Appeals,
Western District.

Aug. 26, 1986.

Solbert M. Wasserstrom, Wasserstrom & Wasserstrom, Kansas City, for appellant.

John J. McFadden, Jr., Kodas, Reed & McFadden, Kansas City, for respondents.

Before PRITCHARD, P.J., SHANGLER, J., and MARTIN, Special Judge.

SHANGLER, Judge.

This is an action for declaratory judgment to determine the rights of Virginia Witte to a share of stock in the Beverly Lakes Investment Company. The share of stock, certificate number 55, was owned by the former husband of Virginia Witte until the marriage was dissolved, when that "ownership interest" was set over to her by court decree. The company refuses to transfer the share of stock on its books to her name, and Witte sues for a declaration that she is legal owner of that share, and for an order that the company issue a certificate to her for that share. At the trial, the principals entered a stipulation of facts, and a motion and cross-motion for summary judgment ensued. The case was submitted on the stipulation, as well as answers to discovery, affidavits and exhibits of the principals. The court determined that no genuine issue as to any material fact subsisted, denied the motion of the plaintiff Witte, and granted the motion of the defendant Beverly Lakes Investment Company.

The litigants accede that no genuine issue as to any material fact subsists between them, and that any right to judgment is a matter of law.

Originally, the Social Target and Hunting Club was the organization which owned and conducted all operations at Beverly Lakes. In year 1932, the Club adopted new articles of association which vested Beverly Lakes Investment Company, as a separate corporation, with title to the real estate and personal property owned by the Club at Beverly Lakes, but retained to the Club the hunting, fishing and recreational functions. Each member of the Club received one share of stock in the Investment Company, and the Investment Company took title to all of the property of the Club. Thus, the Club and Investment Company operated as a joint enterprise composed of identical members. In order to maintain that identity, the sale, assignment or transfer of any share of stock in the Investment company was restricted to a member of the Club—as the legend on the face of the certificates of stock issued by the Investment Company declares. That declaration appears in the Club articles of association, as well, endorsed by all the members—and to which any new member was required to subscribe.

At the outset, members of the Club [later also shareholders of the Investment Company] by mutual agreement selected sites upon which each member who chose to do so might erect a house. The cost of the house was the sole obligation of the respective member, as was its maintenance. The member furnished the house as desired and maintained insurance on the structure and contents. No member, however, "owns" a house at Beverly Lake—rather, the Investment Company holds the title to all real estate. If a member died or transferred membership while alive, the successor to that share of stock, according to usage and practice, took over possession and use of the house occupied by the decedent or transferor. In no instance has a member or the heir or transferee of a member ever been forced to give up possession and use of the house occupied by the member or family. If a house was damaged or destroyed by casualty, the member was free to restore the house, from insurance proceeds or otherwise. While a member occupies a house, the member and family enjoy

the exclusive right of use and occupancy. The use and occupancy of each house is an incident of membership, and each membership is subject to the articles.and bylaws of the Investment Company.

The share of stock in litigation, then, is one share of the Investment Company— certificate number 55. Virginia Witte seeks to be declared the legal owner of this share, and an order that the Investment Company enter her name as such on its books, and thereby gain all the rights and privileges which appertain to that ownership.

Virginia Witte has visited Beverly Lake since 1960, when her father, Dr. Feist, purchased a share in the Investment Company, joined the Club and succeeded to the right to occupy the house of the prior owner of that share. In year 1962, Dr. Butcher, her then husband, also acquired a share in the Investment Company, joined the Club, and succeeded to the right to occupy the residence of the prior owner of that share. Dr. Butcher was accepted as a member of the Club and subscribed to its articles of association. Those articles contained numerous restrictions upon transfers of membership in the Club and upon transfers or assignments of stock in the Investment Company. The replicas of those restrictions also appear in the revised bylaws of the Club, the revised bylaws of the Investment Company, and on the face of the stock certificates of the Investment Company. In quiddity, those provisions restrict the sale, transfer or assignment of Investment Company stock to a member of the Club, and subjected an application to membership in the Club to rejection by the vote of three or more members of the Club. A separate section of the Club bylaws and of the Club

articles of association define the method of the transfer of the shares of a member who dies, resigns, or is expelled from the Club. There is no provision, however, for the transfer of the share of a member under the order of a court in a dissolution case.

Dr. Butcher and wife Virginia [Witte] furnished and occupied the house, and when it was destroyed by fire in 1966, they rebuilt on the same foundation. They separated in 1972, underwent dissolution, and were granted a decree in 1974. The decree set over to Virginia Witte from the marital assets the *"Ownership Interest in Beverly Lakes Club"* (Beverly Lakes Investment Corporation)[1] Virginia Witte gave prompt notice of the decree to the Investment Company, and concurrently named her father as proxy to vote that share at the 1974 annual meeting. Thereupon, the Investment Company secretary-treasurer, McCrath, noted Virginia Witte on the books of the corporation as holder of certificate number 55 but informed her that because of "the restrictive nature of the stock"— [the requirement that a shareholder in the Investment Company must also have been accepted as a member of the Club]—he was unable to reissue the certificate in her name.

The appeal of the dissolution decree was concluded in favor of the wife in 1977, and Dr. Butcher endorsed a stock certificate number 55 to Virginia, who promptly began occupancy of the house at the Lakes. Virginia married Stephen Witte later in 1977, and they undertook to restore the premises, then in poor condition. They installed new floors in the kitchen and bedroom, as well as new tiles in the bathrooms, painted the outside of the structure,

1. The dissolution judgment recites in the preamble to the order of division of property:
 The value of such ownership interest as may exist in this "Beverly Lakes Club" was agreed by the parties to be $6,000 but transferability of such interest was disputed. Respondent asserted that ownership was limited to males while petitioner stated there was no such restriction.
 The record shows that the bylaws of Beverly Lakes Co. [presumably, predecessor of the Bev-

erly Lakes Investment Company] had at one time limited active membership to males, but that restriction was then eliminated and no longer existed at the time of the decree. In any event, there was no assertion to the dissolution court, nor any preoccupation, that the transfer of the share from Dr. Butcher to then Virginia Butcher was clouded by an operative restriction against such an alienation.

and added a sun-deck. The Investment company, at the request of the Witte counsel, commenced to forward the utility bills to the Wittes, who have paid them regularly since. They have also paid the insurance premiums on the house regularly since. They have continued the rehabilitation and use of the house on the Lakes since, although sporadically at times. Stephen Witte applied for membership in the Club in 1978, but was rejected by a vote of the shareholders. Then, at the 1979 annual meeting of the Investment Company, Virginia Witte tendered a check for $25 inscribed with the legend "transfer fee." A letter by secretary-treasurer McCrath returned the remittance with the explanation that a fee is due when the share is reissued upon a transfer of membership, and "not just a transfer between parties." The letter then concluded: *"None of the other women involved paid, nor were asked to pay any fee and I don't think you should either."* The affidavit of McCrath later explained that the remittance was returned to Virginia Witte because under § VII of the Club revised bylaws, a transfer of membership was only upon written *application* and none accompanied the check.

Virginia Witte has been allowed occupancy of the house at the Lakes since 1977, but not the vote or the other usual incidents enjoyed by the membership of the Club and shareholders of the Investment Company. Thus, the action was commenced to declare those rights and to order that a certificate issue to her to succeed to the share owned by the former husband. In an attempt to resolve the pendent litigation, counsel agreed that Virginia Witte submit a formal application for transfer of membership. The application for membership[2] and fee were transmitted through counsel to the Club, and was rejected by a vote of the membership. That vote of exclusion from membership in the Club, the

Club and Investment Company insist, preclude her eligibility to own a share in the Investment Company. They invoke the articles of association, the by-laws of the Club and of the Investment Company, and the declaration on the face of the stock certificates issued by the Investment Company [here, certificate number 55], all which restrict the transfer of any such share to a member of the Club.

The articles of association of the Social Target and Hunting Club—a document every member subscribes—indeed does declare

*Eighth:*

*[t]he sale, assignment or transfer of said shares of stock* in said holding corporation [Beverly Lakes Investment Company] and each of them shall be and by this agreement *are restricted to active and duly chosen members of the Social Target and Hunting Club.* [emphasis added]

The revised bylaws of the Social Target and Hunting Club then define the procedures for the investment of an active membership [and hence eligibility to hold a share in the Investment Company], of a participating membership [and hence a more limited enjoyment of the Club facilities], and for the transfer of membership upon resignation, death or expulsion. The succession to active membership in each case is subject to the vote of the members of the Club.

The revised bylaws of the Beverly Lakes Investment Company declare at Article VIII, Transfer of Stock, that *all assignments or transfers, whether by inheritance or otherwise,* shall be subject to all the terms and conditions imposed by the articles of incorporation executed by each Club member and shareholder of the Investment Company. Article VIII also di-

---

**2.** The application, transmitted on behalf of Virginia Witte to the Club by counsel, was an express request for either a participating membership or active membership. The revised bylaws of the Club, § III, create two category of memberships, not to exceed thirty-five in number. An active member is entitled to all the privileges of the Club. A participating member is the heir of a deceased member, and is entitled to all the privileges of the Club, except to hunt. Virginia Witte was ineligible to become a participating member, because not a survivor spouse, and was refused the status of active member by the vote of the members.

rects that every certificate of stock issued by the Investment Company bear the legend:

> By agreement entered into by the holder hereof, with the holders of each and every share of a stock in this corporation, *the sale, assignment, and transfer of this share of stock, is restricted to a member of the Social Target and Hunting Club and by the terms of such agreement* ... which may be found on file in the office of the corporation .. [emphasis added]

Certificate number 55 bears that legend.

The trial court gave effect to the provisions of the Club articles of association, the Club bylaws, the Investment Company bylaws, and the declaration on the face of certificate number 55, which restricted the sale, assignment or transfer of a share in the Beverly Lakes Investment Company to a member of the Social Target and Hunting Club, to deny the motion of Virginia Witte for summary judgment and to grant the cross-motion of the Club and Investment Company for summary judgment. To come to judgment, the court invoked, as well, the provision of the Beverly Lakes Investment Company bylaws [¶ XII]:

> The corporation shall be entitled to treat the holder of any share of stock, as the holder in fact thereof and shall not be bound to recognize any equitable or other claim to or interest in such share, on the part of any person, whether or not it may have express notice thereof.

The memorandum of judgment concluded:

> Plaintiff is not a member of the Social Club. Her application for membership was denied. Therefore, because of the aforementioned restriction on the stock certificate, defendant Beverly Lakes [Investment Company] cannot and should not be forced to issue or reissue a stock certificate in her name.

It was the Virginia Witte argument to the trial court, and now to us on appeal, that whatever otherwise the validity of the restrictions on a voluntary transfer of a share by the owner [here, Dr. Butcher], they have no efficacy where the transfer is imposed by an order of the court—as in a decree of dissolution. The trial court peremptorily dismissed that tendered ground for judgment: "This Court rejects plaintiff's voluntary versus involuntary transfer theory ... Defendants' motion for summary judgment is GRANTED."

It was the orthodoxy at the common law that a share of stock was personal property and, like all others of that species, was freely transferable. Thus, restraints on alienation were, on principle, repugnant to a free economy—and hence contrary to public policy and void. *Chouteau Spring Co. v. Harris*, 20 Mo. 382, 387 (1855); *Moore v. The Bank of Commerce*, 52 Mo. 377, 379 (1873). *Steele v. Farmers & Merchants Mut. Tel. Assn.*, 95 Kan. 580, 148 P. 661, 662 (1915). That traditional analysis, that a share of stock is personal property merely, was repudiated by Justice Holmes in the influential opinion, *Barrett v. King*, 181 Mass. 476, 63 N.E. 934 at 935 (1902):

> [S]tock in a corporation is not merely property. It also creates a personal relation analogous otherwise than technically to a partnership ... [T]here seems to be no greater objection to retaining the right of choosing one's associates in a corporation than in a firm.

Our supreme court en banc followed the authority of *Barrett* to sustain, on principles of contract, the validity of a first-option restraint on the transfer of the corporation stock found in the articles of incorporation: "No shareholder shall transfer, alienate, or in any way dispose of any share of the Corporation unless such share shall first have been offered for sale to the Corporation." *State at Inf. of Huffman v. Sho-Me Power Co-Operative*, 356 Mo. 832, 204 S.W.2d 276 (banc 1947). The court en banc observed [204 S.W.2d at 279]:

> [A] provision in the charter or articles of incorporation that no stockholder shall sell and transfer his stock either, without the consent of all other stockholders, or that he will first offer it to the stockholders or to the corporation before selling it to other persons, is binding on persons who became owners of the stock. These

provisions, which really amount to agreements between the stockholders themselves, are not invalid as against public policy nor do they amount to an improper restraint of the power of alienation. There seems to be no objection to a corporation reserving to existing members the right to choose their associates.

The court gave emphasis, however, that although a corporation may reasonably *restrict* its shares, a corporation could not lawfully *prohibit* transfer of its shares [*id.* 204 S.W.2d at 280[2]]:

> It cannot completely restrain a transfer, but we cannot hold that retention of an option by the corporation to purchase within a reasonable time is void.

 Thus, it developed as the law of our state [and generally] that reasonable restrictions upon the right of a stockholder to transfer stock may be imposed by an agreement between the stockholder and the corporation, declared in the certificate of stock. *Black and White Cabs of St. Louis, Inc. v. Smith,* 370 S.W.2d 669, 675[6] (Mo.App.1963); *State ex rel. Manlin v. Druggists' Addressing Co.,* 113 S.W.2d 1061, 1063[1] (Mo.App.1938); § 400.8–204 [U.C.C.], comment 2, RSMo 1978; Uniform Stock Transfer Act § 15; *see* cases cited in Annot., *Validity of "Consent Restraint" on Transfer of Shares of Close Corporation,* 69 A.L.R.3d 1327 (1976); *see* text and cases cited in W. Fletcher, Cyclopedia of the Law of Private Corporations, § 5461.6 (Rev. vol. 1985). Thus, it developed that a share of stock is neither, strictly, personal property nor a contract chose, but *sui generis,* with free transferability as the essential attribute. It is not a matter of property merely, because alienation may be restrained., *Shaffer v. Terrydale Management Corporation,* 648 S.W.2d 595, 602[3] (Mo.App.1983). It is not a matter of contract merely, because although agreement may restrict transfer, an absolute restriction on transfer is unreasonable per se and void. *State at Inf. of Huffman v. Sho-Me Power Co-Operative,* 204 S.W.2d at 280[2]. *See* the text and cases cited in Note, *Corporations: Stock Transfer Restrictions,*

44 Cornell L.Q. 133 *et seq.* (1958) and in O'Neal, Close Corporations § 7.06, n. 2 (Second ed. 1971). It is on the rationale that the essential attribute of a share of stock remains its transferability that only those restrictions on alienation, both reasonable and in good faith, are valid and enforceable. *Tu-Vu Drive-In Corp. v. Ashkins,* 61 Cal.2d 283, 38 Cal.Rptr. 348, 391 P.2d 828, 830[2, 3] (1964); *Renberg v. Zarrow,* 667 P.2d 465, 469[1–3] (Okla.1983); *In re West Waterway,* 59 Wash.2d 310, 367 P.2d 807, 812 (1962). That disposition to favor free transfer over restricted transfer transposes into the principle of construction that agreements to restrict transfer of shares are given effect according to the actual terms of limitation, and not beyond. That is to say, the manifest intention of the contractors is confined to the plain meaning of the terms of restriction employed. *Renberg v. Zarrow,* 667 P.2d 465 at 469–[1–3]; *Durkee v. Durkee-Mower, Inc.,* 384 Mass. 628, 428 N.E.2d 139, 141[1, 2] (1981); W. Fletcher, Cyclopaedia of the Law of Private Corporations, § 5461.6 (Rev. vol. 1985); 18A Am.Jur.2d, *Corporations* § 683 (1985). A limitation, therefore, that "[t]he sale, assignment or transfer of said shares of stock ... are restricted to active and duly chosen members of the Social Target and Hunting Club" [as the Club articles of association and the Investment Company bylaws and the Investment Company certificates of stock declare] appertains to self-willed, or voluntary, transfers, and not to transfers imposed upon the holder by a judicial decree, and therefore involuntary, or by other operation of law. *Taylor's Administrator v. Taylor,* 301 S.W.2d 579, 583 (Ky.1957); *Castonguay v. Castonguay,* 306 N.W.2d 143, 145[2–3] (Minn. 1981); 18 Am.Jur.2d, *Corporations* § 694 (1985). Thus, a transfer of stock by devolution from the death of the holder [*Vogel v. Melish,* 31 Ill.2d 620, 203 N.E.2d 422 (1964)], or under an order of a bankruptcy court [*In the Matter Trilling and Montague,* 140 F.Supp. 260 (E.D.Pa.1956), or by seizure and sale under legal process [*Barrows v. National Rubber Co.,* 12 R.I. 173 (1878)], or by a judicial decree in a dissolu-

tion of marriage proceeding [*Earthman's Inc. v. Earthman*, 526 S.W.2d 192 (Tex. App.1975)], or by other operation of law [*McDonald v. Farley & Loetscher Mfg. Co.*, 283 N.W. 261 (Iowa 1939)], is not encompassed by a restriction on dispositions of shares expressed in terms of "sale, assignment or transfer."

The restrictions the Club articles of association, Investment Club bylaws and Investment Club stock certificates formulate do not apply to the allocation of a share from the holder to the spouse of the holder under a decree of dissolution. These formulations do not purport to apply to a transfer enforced upon a shareholder by a judicial decree in a dissolution proceeding. *Durkee v. Durkee-Mower, Inc.*, 428 N.E.2d at 142; *Castonguay v. Castonguay*, 306 N.W.2d at 145[3]; *Earthman's, Inc. v. Earthman's*, 526 S.W.2d at 202[2, 3]. An intention to restrict a transfer ordered by judicial decree, or otherwise imposed involuntarily by operation of law, must be manifest from the words of limitation, and will not be assumed. A restriction, clearly expressed, that it shall apply to transfers by operation of law will be enforced. *Black & White Cabs of St. Louis, Inc.*, 370 S.W.2d at 671; *Renberg v. Zarrow*, 667 P.2d at 470 et seq. A restriction expressed in terms of *involuntary transfers by operation of law* will be understood to encompass changes in the ownership of shares directed by a judicial order of dissolution of marriage. *Castonguay v. Castonguay*, 306 N.W.2d at 146. The trial court ruled, rather: "This court rejects [Witte's] voluntary v. involuntary transfer theory," and error in the judgment was foregone.

The corporations argue in effect that whatever the insufficiency of the "sale, assignment and transfer" terminology [adopted in the Club articles of association and reflected on the face of the Investment Company certificates] as a restriction upon an involuntary change in ownership, the declaration in Article XII of the Investment Company bylaws that *"any and all assignments or transfers*, whether by inheritance *or otherwise*, shall be subject to the terms and conditions set out and imposed by such contract [articles of association]," [emphasis added] encompasses transactions involuntary as well as voluntary.[3] The principle an expression of re-

---

3. We assume for purpose of response [what the Investment Company and Club argument implicitly suppose] that the bylaws of a corporation may enlarge or otherwise amend a restriction on the alienation of shares of a corporation as declared in its charter.

We note, however, that the General Business and Corporation Law empowers the corporation to impose limitations and restrictions on the issuance of shares, then requires them to be stated in the articles of incorporation, and then empowers the shares to issue with the limitations and restrictions as stated in the articles of incorporation. §§ 351.055 and 351.180, RSMo 1978. Such provisions in the corporation charter amount to "agreements between the stockholders themselves." *State at Inf. of Huffman v. Sho-Me Power Co-Operative*, 356 Mo. 832, 204 S.W.2d at 279; *State ex rel. Manlin v. Druggists Addressing Co.*, 113 S.W.2d at 1063[1]. The scheme the Investment Company and the Club adopt exacts the *actual* agreement of the shareholder to the restrictions on transfer, and not merely an agreement the law implies. Thus, the Club articles of association provide that a certificate of the Investment Company may issue only upon the consent of the members of the Club, and that the shareholder shall subscribe to the articles of association—and, as an incident, that "the sale, assignment, and transfer of this share of stock is restricted to a member of the Social Target and Hunt Club." It was to *that* restriction on transfer that Dr. Butcher subscribed, and not to the limitation the Investment Company bylaws declare: that "any and all assignments or transfers, whether by inheritance or *otherwise*" [emphasis added].

The bylaws of the Beverly Lakes Investment Company, of course, do not constitute a charter, nor "agreements between the stockholders themselves." They come into being upon the vote of "two-thirds of the members and/or shareholders present at any annual meeting"— [as the Club articles of association prescribe for the adoption of the bylaws for both the Club and the Investment Company], and need not be submitted to the entire roll of stockholders. The bylaws, therefore, for that and other deficiencies of procedure, cannot purport to constitute an amendment of the articles of incorporation so as to bind as do "agreements between the stockholders themselves." § 351.090, RSMo Supp.1986; *Brinkerhoff-Farris Trust & Sav. Co. Home Lumber Co.*, 18 Mo. 447, 24 S.W. 129 (1893).

striction must vindicate, however, is that the alienation is an inherent attribute of corporate shares, so that, unless the limitation is explicit or in terms of all involuntary transfers by operation of law—the restriction applies only to voluntary transfers. The terms *any, all* and *otherwise,*—[the validity of bylaws to modify the restrictions in the charter assumed]—are includers, augmenters, but not definers. They impose no quality of restriction other than already expressed—upon voluntary transfers—and the *any, all* and *otherwise* are *ejusdem generis* as to that antecedent.

Thus, in *Castonguay v. Castonguay,* 306 N.W.2d 143 (Minn.1981), the words of restriction: "sell, assign, transfer, pledge, hypothecate, *or in any other manner dispose of*" [emphasis added] were held not to apply to an involuntary transfer of stock ordered by the court in a dissolution of marriage proceeding. In *Earthman's, Inc. v. Earthman,* 526 S.W.2d 192 (Tex.Civ. App.1975), the restriction: "will not sell, assign, transfer, pledge *or in any way dispose of or encumber any such shares* without first ..." [emphasis added] did not apply to an involuntary transfer by operation of law under a divorce decree. Thus, where the terms of restriction are explicit as to certain involuntary transfer of shares—as to the executor of the holder, or to the grantee of the share under an execution sale—but not as to others, the restrictions do not operate beyond the express language to affect an order of transfer entered by judicial decree in a divorce proceeding. *Durkee v. Durkee-Mower, Inc.,* 384 Mass. 628, 428 N.E.2d 139 (1981); *see also Vogel v. Melish,* 31 Ill.2d 620, 203 N.E.2d 411, 413[3, 4] (1981); *Taylor's*

*Administrator v. Taylor,* 301 S.W.2d 579, 582[2] (Ky.1957). So also the restriction Article XII undertakes to impose [the validity of bylaws to amend a restriction imposed by the corporate charter assumed, once again] by express language appertains not only to voluntary transfers, but to an involuntary transfer upon inheritance from the holder of the investment Company—but to none other.

The corporations allude to the declaration of the subscribers-framers in the Club articles of association: "That the [consent] principle of assignment and transfer of memberships is absolutely necessary and essential to the continued existence and life of said Club," as an explicit expression of intention that the restriction which subjects "the sale, assignment and transfer" of shares to the consent of the membership appertains to *all* transfers, involuntary as well as voluntary. They cite the aphorism of Justice Holmes in *Barrett v. King,* and its iterations by our courts—that stock in a corporation is not merely property, but creates a personal relationship analogous to a partnership, and a concomitant right to choose associates—to argue that to construe the restriction to appertain only to voluntary transfers, is to impair the right of the shareholders to choose their associates and the harmony necessary to the life of a close corporation.

The question before the trial court, and adjudicated by the summary judgment, and now before us on appeal, is not whether the consent restraint on transfers imposed by the Club articles of association subserves a needed corporate end and hence is reasonable,[4] but only whether the transfer of the

---

In our present scheme of law, therefore, by laws may function to impart notice to purchasers of shares of the restrictions on transfer imposed by the corporation of issue, but do not function to declare or amend the restrictions on the alienation of the corporation shares. *See* Gleick, *Restrictions Upon the Alienation of Stock of Missouri Corporations,* 5 Mo.B.J. 3 (1949).

**4.** The test, *par excellence,* of the reasonableness of a restriction on the transfer of corporate shares, is: "[W]hether the restraint is sufficiently needed by the particular enterprise to justify

overriding the general policy against restraints on alienation." F. O'Neal, Close Corporations § 7.06 (2d ed. 1971); Annotation, *Validity of "Consent Restraint" on Transfer of Shares of Close Corporation,* § 69 A.L.R.3d 1327, 1329 (1976). The complete catalogue of factors usually used as determinants of the validity—reasonableness—of a restriction is given in F. O'Neal at § 7.06, *id.,* and uniformly acknowledged in the decisions and texts. *See* H. Henn, Corporations § 281, at 553 (2d ed. 1970); 18A Am.Jur.2d *Corporations* § 684, at 560 *et seq.*

share to Virginia Witte by order of the domestic relations court is encompassed by the language of the restriction as written. It is not a matter of the *reasonableness* of the restriction, but of the *construction* of the restriction—reasonableness assumed—that the litigants pose for decision.

We determine, as the predicate that free alienability is an inherent attribute of shares requires, that a restriction on the transferability of shares has no effect beyond the plain meaning of the terms employed. We determine, cognately, that the language of restriction on the transfer of the Investment Company shares adopted in the articles of association and declared on the Investment Company certificates, as written, apply to voluntary transfers, and not to involuntary transfers by operation of law.

The order of summary judgment in favor of Beverly Lakes Investment Company and Social Target and Hunting Club is reversed. Virginia Witte is entitled, under the unassailable proof, to a declaration and summary judgment as a matter of law that she is the owner of certificate number 55 of Beverly Lakes Investment Company and that she takes the transfer free of any restriction of purchase option or consent of the members of Social Target and Hunting Club. Virginia Witte is entitled, also, to a declaration and summary judgment that Beverly Lakes Investment Company issue a certificate to her in her name and that the Investment Company books show Virginia Witte as the holder of the certificate,

---

These determinant factors include: the size of the corporation, *the duration of the restriction, the formula imposed to determine the option price of the shares subject to restraint on transfer,* and the likelihood that the restrictions will promote the best interests of the enterprise.

The arguments of the litigants assume the reasonableness of the restriction on transfer adopted by the Club charter and imposed on the shares of the Investment Company. The appeal poses only whether the terms of restriction, as written, encompasses the judicial order of transfer of certificate number 55 from Dr. Butcher to [then] Virginia Butcher. The corporations—Club and Investment Company—assume throughout that the restrictions, once construed to apply to the judicial order of the domestic relations court, would operate to preclude effect to the transfer to Virginia Witte because her application for membership in the Social Target and Hunt Club was rejected by their vote. Only *reasonable* restrictions on transfer of corporate shares are valid, however; absolute restrictions are *per se* invalid. State at Inf. of *Huffman v. Sho-Me Power Cooperative,* 204. S.W.2d at 280[2].

The restrictions as written are suspect whether or not they are amenable to the construction that they appertain to involuntary transfers by operation of law as well as voluntary transfers. A restriction on transfer unless given consent by the other shareholders—a consent restraint—unlimited as to time or arbitrarily or unfairly withheld, tends to bar alienation, and hence tends to absolute restraint and invalidity. F. O'Neal, Close Corporations § 7.08 (2d ed. 1971); *Sanders v. Tropicana,* 31 N.C.App. 276, 229 S.E.2d 304, 307[1] (1976). An option to purchase restraint unlimited as to the time of exercise, or without statement as to the option price or a formula for its determination, also tends to absolute restraint and invalidity. W. Fletcher, Cyclopedia of the Law of Private Corporations § 5461.6 at 266 (Rev. vol. 1985); F. O'Neal, Close Corporations § 7.18 (2d ed. 1971). *See also* Parker, *Closed Corporations Buy-Out Agreements Between Stockholders,* 17 Mo.B.J. 296 (1961).

The Club articles of association impose both, the consent restraint and the purchase option restraint, on the transfer of shares of the Investment Company. The articles restrict transfer of Investment Company shares to members of the Social Target and Hunt Club. An application for membership in the Club [and hence eligibility to purchase or otherwise receive transfer of a share in the Investment Company] is *subject to the consent of the Club membership,* and is rejected by three *no* votes. This constitutes a consent restraint. The Club articles of association also provides that a member who desires to sell the membership in the Club [and the concomitant share in the Investment Company] must first offer the share to the Club: "If the Club does not buy, the member desiring to sell is privileged to find a buyer *who is acceptable to the Club.*" [emphasis added] This constitutes a purchase option restraint. There is no time limit to either restraint, nor the price the Club must pay for the exercise of the option to purchase the share, nor any mechanism to determine the price. These restraint devices allow the Club/Investment Company corporations to refuse to purchase from a holder/member desirous to sell, and at the same time to withhold consent, indefinitely and without reason, to the sale by the shareholder to a third person willing to purchase. These devices, in effect, render a sale impossible, except on the terms and for the price the Club/Investment Company demand. In short, they reduce a shareholder to a corporate captive.

and that the Social Target and Hunting Club books show Virginia Witte as an active member. The cause is remanded to the circuit court with directions that the circuit court enter the declarations and judgment rendered by this opinion.

All concur.