658 A.2d 1383

ROUSE & ASSOCIATES, INC. and Willard G. Rouse, III and George F. Congdon, t/a Rouse & Associates, Appellants,

v.

W. Paul DELP and Lansdale Realty Company, Inc., Intervenor, Appellees.

ROUSE & ASSOCIATES, INC.

v.

W. Paul DELP, Lansdale Realty Co., Inc.

Appeal of W. Paul DELP.

Superior Court of Pennsylvania.

Argued Feb. 14, 1995.

Filed June 1, 1995.

Mark C. Clemm, Plymouth Meeting, for Rouse & Associates.

Mark F. Himsworth, Lansdale, for Delp.

Before WIEAND, BECK and BROSKY, JJ.

WIEAND, Judge:

We are here concerned about the effect of restrictions imposed upon the alienability of the shares of stock of a family owned corporation upon execution by a creditor against one of the shareholders. The trial court held that (1) the restrictive covenant did not prevent the involuntary sale of the debtor's stock, but (2) the purchaser took title subject to the terms of the restrictions imposed by the stockholders' agreement. Both parties appealed. We affirm.

Rouse and Associates, Inc. (Rouse) recovered a judgment against W. Paul Delp in the amount of $6,132,201.85.[1] It also sought to execute upon 95 shares of stock owned by Delp in Lansdale Realty Company, a business owned and operated by the Delp family. In connection therewith Rouse sought to enjoin Delp from transferring title to his shares of stock. By order dated June 24, 1994, Delp was directed to surrender to the sheriff his 95 shares of stock in Lansdale Realty Corporation, to be sold subject to the terms of the stock agreement previously entered by the family stockholders. Appeals followed by both debtor and creditor.

Lansdale Realty Company, Inc. was incorporated in Pennsylvania in 1955 by Ellis P. Delp and his two sons, Charles O. and Ellis B. Delp. W. Paul Delp, a third son, is Vice President of the corporation and owns 95 shares. In December, 1978, the shareholders executed a stock purchase agreement by the terms of which they agreed that they would not "sell, transfer, give, pledge, assign or in any manner encumber or alienate any of the stock" without first offering it to the

1. A petition to open or strike the judgment was denied, and the trial court's order was affirmed on appeal by the Superior Court. See: *Rouse v. Delp,* 433 Pa.Super. 661, 639 A.2d 846 (1993).

corporation or to the other stockholders. Other provisions of the agreement were intended to establish the price to be paid for the stock. A notice of the restriction thereby placed on the alienability of the stock was to be included on the face of each stock certificate issued.

A family agreement imposing restrictions on the sale of stock is not invalid as an unreasonable restraint on alienation. *Mather Estate*, 410 Pa. 361, 189 A.2d 586 (1963). See also: 15 Pa.C.S. § 1529; *Beggy v. Deike*, 413 Pa. 74, 83, 196 A.2d 179, 183 (1963); *Fitzsimmons v. Lindsay*, 205 Pa. 79, 54 A. 488 (1903); *Garrett v. Philadelphia Lawn Mower Co.*, 39 Pa.Super. 78, 82 (1909). Because alienation is an inherent attribute of corporate stock, however, restrictive agreements are not favorites of the law and are strictly construed. See: *In Matter of Trilling and Montague*, 140 F.Supp. 260, 261 (E.D.Pa.1956); *Castonguay v. Castonguay*, 306 N.W.2d 143, 145 (Minn.1981); *Witte v. Beverly Lakes Investment Co.*, 715 S.W.2d 286, 293 (Mo.App.1986). See also: W. Fletcher, Fletcher Cyc. Corp. § 5461.6 (Rev. vol. 1985).

The stock purchase agreement in this case does not purport to restrict or prevent the involuntary sale of stock by judicial process. In the absence of express language imposing such a restriction, no intent to impose such a restriction will be inferred. See: *Witte v. Beverly Lakes Investment Co.*, *supra* 715 S.W.2d at 292. See also: *In the Matter of Trilling and Montague*, *supra* 140 F.Supp. 260. Because no such restriction has been imposed, we need not now decide the validity of or the effect to be given to an express restriction preventing an involuntary sale of stock. It is enough for our purposes that in this case the stock purchase agreement did not attempt to place the stock beyond the reach of creditors having bona fide claims against the stockholders.

It may be, as Rouse argues, that it is the purpose of a sheriff's sale to obtain the highest price for property sold. However, that is inadequate reason for invalidating otherwise valid restrictions on the voluntary alienation of stock. Cf. *Mather Estate*, *supra* 410 Pa. 361, 189 A.2d 586 (family

business stock purchase valid despite charge that agreed price for stock too low). If Rouse becomes the purchaser of Delp's stock, it can acquire only the interest which Delp owned. Therefore, the acquisition of his stock is subject to the same restrictions which prevent Delp from freely alienating his stock. See: *First Oklahoma Bank, N.A. v. Sparkman*, 850 P.2d 350, 352 (Okl.App.1992) (levy of execution effects lien in favor of judgment creditor only to extent of debtor's actual interest).

Rouse contends, however, that the restrictions were abrogated by the stockholders who, themselves, effected transfers of stock without first offering the stock to the corporation. These transfers, however, were among family members. They were isolated transactions and did not demonstrate an intent to abrogate the restrictions on stock purchases generally. These restrictions the family carefully observed. Moreover, the family transfers were in no way repugnant to the stockholders' intent to keep ownership of the corporation in the family. See: *Bechtold v. Coleman Realty Co.*, 367 Pa. 208, 79 A.2d 661 (1951). See generally: 18 Am.Jur.2d Corporations § 698. Compare: *Elliott v. Lindquist*, 356 Pa. 385, 52 A.2d 180 (1947) (equity would not support prayer for relief by stockholders who themselves established pattern of long continued disregard of very by-laws they sought to enforce).

Because we find no error, the trial court's order will be affirmed.

Order affirmed.